# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. José R. Almonte |
| | : | |
| v. | : | Mag. No. 25-16130 |
| | : | |
| CLOYD CHAMBERS | : | **CRIMINAL COMPLAINT** |

I, Jonathan M. Colon, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## SEE ATTACHMENT A

I further state that I am a Deportation Officer with United States Immigration and Customs Enforcement, and that this complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_/s/ Jonathan M. Colon_
_____
Jonathan M. Colon
Deportation Officer
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

Officer Jonathan M. Colon attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(B)(2)(A) on this 25th day of July 2025.

_/s/ José R. Almonte_
_____
Hon. José R. Almonte
United States Magistrate Judge

## ATTACHMENT A

### (Assaulting, Resisting, and Impeding Certain Officers or Employees)

On or about July 17, 2025, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

### CLOYD CHAMBERS,

did forcibly assault, resist, oppose, impede, intimidate, and interfere with persons designated in Title 18, United States Code, Section 1114, namely, one or more Special Agents employed by the United States Department of State, Diplomatic Security Service, while the Special Agents were engaged in and on account of the performance of the Special Agents' official duties, involving physical contact, and in doing so, did inflict bodily injury to one or more Special Agents.

In violation of Title 18, United States Code, Sections 111(a)(1) and (b).

## ATTACHMENT B

I, Jonathan M. Colon, am a Deportation Officer in the Enforcement and Removal Operations unit of U.S. Immigration and Customs Enforcement ("ICE"). The information contained in this complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including immigration records and other documents. Because this complaint is being submitted for a limited purpose, I have not set forth every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1.      The defendant, CLOYD CHAMBERS ("CHAMBERS"), is a citizen of Jamaica and is not a citizen of the United States.

2.      On or about August 22, 2022, CHAMBERS was released from ICE custody on an ICE Order of Supervision ("OSUP"), which is currently in effect and requires CHAMBERS to comply with certain supervision requirements.

3.      On or about July 7, 2025, ICE and other federal law enforcement agencies became aware that CHAMBERS was not in compliance with his OSUP and initiated a targeted enforcement operation to locate and arrest CHAMBERS administratively for noncompliance and to redetermine whether CHAMBERS should reenter ICE custody or remain under supervision. ICE received personnel assistance from, among other agencies, the Diplomatic Security Service of the United States Department of State ("DSS").

4.      Prior to conducting the operation, ICE noted CHAMBERS's criminal history, including aggravated assault and firearms possession. Thus, law enforcement determined it would be necessary to proceed with caution when approaching CHAMBERS.

5.      On or about July 17, 2025, ICE, DSS, and other federal law enforcement conducted surveillance of a location in Newark, New Jersey, where they suspected CHAMBERS to reside (the "Residence"). At approximately 8:45 a.m., law enforcement observed CHAMBERS exit the Residence, enter an Acura TLX registered to CHAMBERS (the "Acura"), make a U-turn, and drive away.

6.      Law enforcement used multiple vehicles to approach CHAMBERS. Two vehicles turned on their lights and sirens and blocked the Acura's path. The Acura came to a stop with its engine still running, and law enforcement vehicles blocked its path in front and behind.

7.     Four DSS Special Agents were present for the operation.  Each wore body armor bearing patches labeled "POLICE – US FEDERAL AGENT – DIPLOMATIC SECURITY SERVICE" on the front and back and displayed gold-colored DSS badges.

8.     One DSS Special Agent ("SA-1") approached the driver's side window of the Acura, recognized CHAMBERS as the driver, and ordered CHAMBERS to exit the Acura, and stated that SA-1 would break the window otherwise.  SA-1 observed that the Acura's windows were heavily tinted, preventing SA-1 from fully seeing the inside of the Acura.

9.     CHAMBERS slightly lowered the driver's side window and, in English, verbally refused to exit the Acura, claiming that he did not have to follow SA-1's instructions.  SA-1 again repeated his command for CHAMBERS to exit the Acura and that SA-1 would break the window and drag CHAMBERS out otherwise; CHAMBERS refused again.

10.     Another DSS Special Agent ("SA-2") then approached the driver's side window of the Acura, observed that CHAMBERS was attempting to roll the window back up. SA-2 then used a glass punch device to break the window.  A third DSS Special Agent ("SA-3") ran over to the driver's side of the Acura.  SA-1, SA-2, and SA-3 (collectively, the "SAs") then continued to announce themselves as police and ordered CHAMBERS to exit the vehicle.

11.     The SAs then observed CHAMBERS reach beneath the driver's seat and ordered CHAMBERS to show them his hands.  When CHAMBERS did not comply, the SAs reached into the Acura, grabbed CHAMBERS's arms, and attempted to bring him under control, but CHAMBERS struggled against the SAs and repeatedly broke free of their grasp.

12.     While the SAs were still struggling to control CHAMBERS, CHAMBERS began to alternate putting the car in reverse and in drive, and gradually turned the Acura toward the curb.  In the process, the Acura struck one of the law enforcement vehicles parked behind it, damaging the bumper of the law enforcement vehicle.

13.     CHAMBERS then drove the Acura onto the curb and away from the scene.  Because SA-2 was still reaching into the Acura to control CHAMBERS, CHAMBERS dragged SA-2 a short distance before SA-2 could free himself from the Acura.  SA-2 suffered lacerations on both arms from being dragged while reaching into a broken window, requiring a hospital visit and multiple sutures.